# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Nuverra Environmental Solutions, Inc. Derivative Shareholder Litigation | Lead Case No. CV-13-01933-PHX-DLR  <br><br>Member Case Nos. CV-13-2020-PHX-DLR & CV-13-02034-PHX-DLR  <br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint (Doc. 52). Having considered the Motion, Plaintiffs' response (Doc. 56), and Defendants' reply (Doc. 57), the Court grants the Motion.

## BACKGROUND

Nominal Defendant Nuverra Environmental Solutions, Inc. ("Nuverra") is a Delaware corporation that maintains its principle executive offices in Scottsdale, Arizona. (Doc. 44 at ¶ 25.) Nuverra provides oilfield services, including fresh water delivery and waste water collection, treatment, and disposal related to natural gas drilling. (Doc. 44 at ¶ 25.) Defendant Richard J. Heckmann founded Nuverra in 2007, served as Chief Executive Officer until November 2012, and currently is Executive Chairman of the board. (Doc. 44 at ¶ 26.) Defendant Mark. D. Johnsrud is Nuverra's current CEO, a 38% shareholder, and Vice-Chairman of the board. (Doc. 44 at ¶ 27.) Defendant Jay C. Parkinson is Nuverra's Executive Vice-President and Chief Financial Officer, but is not and has not been a member of the board. (Doc. 44 at ¶ 35.) Defendants J. Danforth

Quayle, Alfred E. Osborne, Jr., Lou L. Holtz, Andrew D. Seidel, Edward A. Barkett, Robert B. Simonds, Jr., and Kevin L. Spence are non-officer, Nuverra outside directors. (Doc. 44 at ¶¶ 28-34.) Plaintiffs Matthew D. Kennedy, Mark Mutton, and George Partilla are current Nuverra shareholders who were also shareholders at the time of the wrongs alleged in this action. (Doc. 44 at ¶¶ 22-24.)

Plaintiffs filed separate shareholder derivative suits against Defendants in September and October 2013, which this Court later consolidated. (Docs. 1, 28.) The consolidated complaint alleges breaches of fiduciary duty arising out of allegedly misleading statements and omissions made, authorized, or approved by Defendants concerning Nuverra's financial condition and prospects, which purportedly resulted in substantial losses. (Doc. 44 at ¶¶ 153-56.) Additionally, the complaint alleges unjust enrichment and waste of corporate assets related to expenditures, acquisitions, and compensation packages paid during the time of the alleged wrongs. (Doc. 44 at ¶¶ 158, 159, 163.) Defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6), arguing Plaintiffs insufficiently plead demand futility and fail to state a claim upon which relief can be granted. (Doc. 52.)

For the following reasons, Plaintiffs fail to sufficiently plead demand futility. Because resolution of the demand futility issue is dispositive, the Court declines to address Defendants' alternative argument based on Rule 12(b)(6).

## ANALYSIS

**I. Legal Standard**

Responsibility for bringing a lawsuit in the name of a corporation rests with the board of directors. *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990). "[T]he right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). "This requirement protects the directors' right . . . to exercise their

business judgment as to whether to pursue a corporate claim and prevents abuse of the derivative suit remedy . . . by insisting that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Baca v. Crown*, 458 Fed. App'x 694, 969 (9th Cir. 2011) (internal quotations omitted).

To that end, Federal Rule of Civil Procedure 23.1(b)(3) requires a derivative complaint to "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort." Plaintiffs made no demand on Nuverra's board, but assert demand would be futile. (Doc. 44 at ¶ 119.) Plaintiffs must therefore plead sufficient, particularized facts demonstrating demand futility.

Demand futility is determined at the time Plaintiffs filed the complaint. *See Harris v. Carter*, 582 A.2d 222, 228-29 (Del. Ch. 1990). "The burden to establish demand futility is 'more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss.'" *In re VistaCare, Inc., Derivative Litig.*, No. CIV 04-1740-PHX-RCB, 2007 WL 2460610, at *2 (D. Ariz. Aug. 23, 2007) (quoting *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)). Although Plaintiffs need not plead evidence, *Levine*, 591 A.2d at 207, they must allege particularized factual statements essential to their claims, *Brehm*, 746 A.2d at 254. Conclusory accusations do not satisfy this burden. *Id.*

Unlike a motion to dismiss pursuant to Rule 12(b)(6), "a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim." *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006). Instead, it is meant to determine who is entitled to assert the underlying substantive claim on the corporation's behalf. *Id.* If Plaintiffs fail "to meet these stringent requirements, the complaint must be dismissed even if it pleads otherwise meritorious claims." *VistaCare*, 2007 WL 2460610, at *2. Demand futility must be pled

for each of Plaintiffs' claims. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc., v. Stewart*, 833 A.2d 961, 976-77 n.48 (Del. Ch. 2003).

**II. The Derivative Complaint Fails to Sufficiently Plead Demand Futility.**

Where, as here, Plaintiffs do not challenge a specific action of the board but rather challenge board inaction or acquiescence in wrongful conduct, demand is excused when the complaint raises a reasonable doubt that a majority of the board's directors are disinterested and independent. *Rales*, 634 A.2d at 934; *see also Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1332 n.3 (D. Ariz. 2007) ("*Rales* controls because Plaintiff does not challenge a specific decision of the board."). At the time Plaintiffs initiated this action, Nuverra's board had nine directors: Heckmann, Johnsrud, Simonds, Seidel, Spence, Osborne, Quayle, Holtz, and Barkett.[1] Thus, to excuse demand the derivative complaint must plead sufficient, particularized facts raising reasonable doubt that at least five Nuverra board members were disinterested or independent.

**a. Director Interest**

Director interest exists when "the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders," *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992), or faces "a sufficiently substantial threat of personal liability to compromise [his] ability to act impartially on a demand," *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003). Plaintiffs contend demand is excused because all nine of Nuverra's directors face a substantial risk of liability for their own misconduct. (Doc. 44 at 73.) To sufficiently plead a substantial threat of personal liability, Plaintiffs

---

[1] The original complaint in the lead case was filed in September 2013. (Doc. 1.) In October 2013, the Court consolidated the above-captioned cases. (Doc. 28.) Nuverra added a tenth seat to its board in November 2013, and appointed non-defendant R.D. "Dan" Nelson to that position. (Doc. 44 at 73 n.4.) Plaintiffs filed the Verified Consolidated Shareholder Derivative Complaint in December 2013. (Doc. 44.) Thus, Nuverra's board had nine directors at the time the action was initiated, but ten at the time the consolidated complaint was filed. The consolidated complaint pleads no facts regarding Mr. Nelson's disinterestedness or independence and, thus, he is presumed capable of exercising impartial business judgment. Because Plaintiffs insufficiently plead demand futility as to a majority of Nuverra's nine original board members, however, it is unnecessary to decide whether Nelson should be included in this analysis. For purposes of this Order, the Court looks only to the nine Nuverra board members in existence at the time the action was initiated.

- 4 -

must allege particularized facts showing at least five directors "committed a non-exculpated breach of fiduciary duty . . . ." *Guttman*, 823 A.2d at 503.

Nuverra's certificate of incorporation includes a provision limiting directors' liability for breaches of fiduciary duty.[2] (Docs. 52 at Ex. A, 56 at 15 n.4.) Thus, "only fiduciary breaches involving intentional misconduct, bad faith or disloyalty can form the basis of a cause of action against the directors." *VistaCare*, 2007 WL 2460610, at *4 (citing *Malpiede v. Townson*, 780 A.2d 1075, 1094-95 (Del. 2001)). Plaintiffs note the exculpatory provision does not exculpate directors for acts taken in their capacity as officers, and therefore does not protect Heckmann or Johnsrud, who served as both officers and directors during the relevant time period. (Doc. 56 at 15 n.4.) Regardless, the derivate complaint fails to plead particularized facts sufficient to show the seven outside directors—Osborne, Spence, Barkett, Quayle, Holtz, Seidel, and Simonds—who are covered by the exculpatory provision, face a substantial risk of liability sufficient to excuse demand.

### i. Audit Committee Defendants (Osborne, Spence, Barkett)

Osborne, Spence, and Barkett are members of Nuverra's Audit Committee, charged with overseeing the integrity of the company's financial statements and its compliance with legal regulatory requirements. (Doc. 44 at ¶ 127.) The derivative complaint alleges the Audit Committee defendants "were on actual notice that the Company was susceptible to deficient internal controls and corporate governance" because Osborne, who chairs the Audit Committee, knew about separate litigation over problems with one of Nuverra's past acquisitions. (Doc. 44 at ¶¶ 128-29). The complaint claims Osborne, Spence, and Barkett face a substantial risk of liability because they failed to require the Company to present detailed information substantiating claims about the value of new acquisitions or to investigate the causes of missed financial projections, presided over multiple guidance misses and failed to take corrective action to

---

[2] This Court may take judicial notice of a publicly-filed certificate of incorporation without converting this Motion to a motion for summary judgment. *See Jones*, 503 F. Supp. 2d at 1340.

- 5 -

ensure guidance was more reliable, knew or should have known that Nuverra was making misleading and inaccurate statements, and declined to halt untrue or misleading statements. (Doc. 44 at ¶¶ 129-132.) These allegations are vague and conclusory. *See Jones*, 503 F. Supp. 2d at 1334 ("The attempt to allege that the Audit Committee is liable because it actively participated in the issuance of false financial statements is entirely conclusory."). At best, these allegations might suggest negligent oversight, but the complaint fails to show Osborne, Spence, or Barkett faced a substantial risk of liability for intentional misconduct, bad faith, or disloyalty.

### ii. Governance Committee Defendants (Osborne, Quayle, Holtz)

Osborne, Quayle, and Holtz are co-founders of the company and members of Nuverra's Nominating and Corporate Governance Committee. (Doc. 44 at ¶ 133.) The complaint alleges all three Governance Committee defendants were on notice Nuverra was susceptible to deficient internal controls, especially related to financial disclosures and acquisitions, because they were defendants in a previous derivative suit related to a prior acquisition. (Doc. 44 at ¶ 133.) Plaintiffs claim the Governance Committee defendants face a substantial risk of liability for breach of fiduciary duty because they failed to put in place measures to remedy business practices that led to the issuance of allegedly untrue and misleading statements, knew or should have known about misleading and inaccurate statements, failed to halt untrue and misleading statements, and took no action to correct statements or to institute functioning controls. (Doc. 44 at ¶¶ 134-35.) These allegations are nearly identical to those previously made against the Audit Committee defendants and suffer the same defects. These vague and conclusory allegations fail to show any of the Governance Committee defendants face a substantial risk of liability for intentional misconduct, bad faith, or disloyalty.

### iii. Remaining Outside Director Defendants (Seidel and Simonds)

The complaint alleges Seidel faces a substantial threat of liability for breach of fiduciary duty because he knew or should have known about inaccurate or misleading statements, and because he signed a March 2013 Form 10-K that included misleading

statements. (Doc. 44 at ¶ 137.) Similarly, the complaint asserts Simonds is not disinterested because he signed the same Form 10-K. (Doc. 44 at ¶ 138.) Plaintiffs also generally allege all director defendants "presid[ed] over the Company's repeated issuance of misleading statements that failed to disclose significant negative trends affecting Nuverra." (Doc. 44 at ¶ 140.) Allegations that directors merely presided over or participated in wrongful conduct are insufficient to demonstrate demand futility. *See Jones*, 503 F. Supp. 2d at 1333. Nor is signing a misleading Form 10-K, without particularized facts showing bad faith or intentional misconduct, sufficient. *See Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). Plaintiffs allegations against Seidel and Simonds fail to satisfy the stringent standard of Rule 23.1. As with the Audit and Governance Committee defendants, the allegations might, at best, suggest negligent oversight, but fall far short of demonstrating intentional misconduct, bad faith, or disloyalty. Accordingly, Plaintiffs fail to plead particularized facts sufficient to raise a reasonable doubt that the seven outside directors are disinterested.[3]

**b. Director Independence**

Even where a majority of directors do not face a substantial risk of liability, demand may, nonetheless, be futile if a majority of directors lack independence. "A director lacks independence if he is beholden to an interested director or 'so under [another's] influence that [his] discretion would be sterilized.'" *Jones*, 503 F. Supp. 2d at 1332 (quoting *Rales*, 634 A.2d at 936).

Plaintiffs claim Holtz, Osborne, Quayle, Spence, and Seidel "are incapable of objectively considering a pre-suit demand against each other because of longstanding history of business relationships amongst and between each other." (Doc. 44 at ¶ 142.) Specifically, Holtz, Osborne, Quayle, Spence, and Seidel served alongside Heckmann on the board of a different company, US Filter, during the 1990s. (Doc. 44 at ¶ 143.)

---

[3] The complaint contains no particularized facts suggesting any of the defendants face a substantial risk of personal liability for waste of corporate assets or unjust enrichment. To the extent those claims are derivative of the breach of fiduciary duty claims, demand futility fails for the same reasons explained herein.

Additionally, Holtz, Osborne, and Quayle served alongside Heckmann on the board of K2 Inc., sometime between 2002 and 2007. (Doc. 44 at ¶ 144.) But the complaint fails to allege particularized facts explaining why or how these two prior business ventures created a bias-producing personal or professional relationship between these directors. *See Beam*, 845 A.2d at 1050 ("[T]o render a director unable to consider demand, a relationship must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."); *Jones*, 503 F. Supp. 2d at 1339 ([C]onclusory allegations of outside business relationships, with no evidence of bias, are not sufficient.").[4]

Finally, the complaint alleges Holtz, Quayle, and Osborne are "loyal to defendant Heckmann and their financial interests lie with defendant Heckmann" because they co-founded Nuverra and made substantial earnings off the company's IPO. (Doc. 44 at ¶ 145.) This allegation is wholly conclusory and amounts to a suggestion that these directors cannot exercise independent business judgment simply because they worked and made money together.

## CONCLUSION

The derivative complaint fails to plead particularized facts raising a reasonable doubt about the disinterestedness or independence of the seven outside directors sufficient to excuse pre-suit demand.[5] Although the Court doubts Plaintiffs can amend the complaint to plead particularized facts sufficient to establish demand futility, the

---

[4] The complaint alleges US Filter contributed to Quayle's political campaign and fundraising efforts from 1989 to 1992. (Doc. 44 at ¶ 143.). The Court is unconvinced, however, that those contributions indicate Quayle, two decades later, is so beholden to his fellow Nuverra directors as to render him incapable of exercising independent business judgment. In any event, even if US Filter's political contributions raise a reasonable doubt about Quayle's independence, six outside director defendants remain qualified to independently consider pre-suit demand.

[5] Because the complaint fails to raise a reasonable doubt about the disinterestedness or independence of the seven outside directors, it is unnecessary to consider whether the officer defendants, Heckmann and Johnsrud, are incapable of impartially considering demand.

complaint nonetheless is dismissed with leave to amend.

**IT IS ORDERED** that Defendants' Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint (Doc. 52) is **GRANTED**.

**IT IS FURTHER ORDERED** granting Plaintiffs leave to file an amended complaint within 15 days of this Order.

Dated this 25th day of July, 2014.

_____
Douglas L. Rayes
United States District Judge